NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ALEXANDRA C., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, Z.C., V.C., *Appellees.*

No. 1 CA-JV 20-0130
FILED 08-27-2020

Appeal from the Superior Court in Maricopa County
No. JD36904
The Honorable Lori Ash, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Denise L. Carroll Attorney at Law, Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Chief Judge Peter B. Swann joined.

---

**W I N T H R O P**, Judge:

¶1        Alexandra C. ("Mother") appeals the juvenile court's order severing her parental rights to Z.C. and V.C. ("the children").[1]  Mother argues the juvenile court erred in finding she substantially neglected or willfully refused to remedy the circumstances that caused the children to be in an out-of-home placement.  Mother also argues severance was not in the children's best interest.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**[2]

¶2        Mother is the biological mother of the children, who were born in 2014 (Z.C.) and 2015 (V.C.).  Brett N. is the biological father of Z.C. Steven H. ("Father") is the biological father of V.C. and considers himself a father-figure to Z.C.

¶3        On January 11, 2019, the Department of Child Safety ("the Department") took the children into care after Mother left them in the care of relatives approximately one week before Christmas with no plan to retrieve them.  The Department began an investigation and discovered Mother and Father were both unemployed, their current home was filthy and without electricity, and both parents had a history of substance abuse. Due to her long-term use of suboxone, Mother had entered a detoxification program in December 2018, but she was discharged before completing the program.  The Department attempted to implement a present-danger plan that required both parents to submit to a rule-out drug test and submit to a

---

[1]        The court also severed the rights of the children's biological fathers. Only the severance of Mother's rights is at issue in this appeal.

[2]        We view the facts in the light most favorable to upholding the juvenile court's order.  *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008).

home inspection. Both parents refused to submit to the drug test, and Mother refused to allow the Department in her home.

**¶4**        Soon thereafter, the Department initiated a formal dependency action. In April 2019, Mother pled no contest to the Department's allegations. The juvenile court found the children dependent as to Mother and adopted a case plan of family reunification.

**¶5**        In February 2019, the Department submitted a referral to Terros for Mother for a substance-abuse evaluation and treatment. After multiple failed attempts at contacting Mother, a Department employee finally met with Mother at her home, where Mother agreed to schedule an evaluation appointment. Mother never scheduled an appointment, however, and Terros closed the referral for lack of engagement. In April and June, the Department submitted second and third referrals for Mother, but they also resulted in closure due to a lack of engagement. In September, the Department made a fourth referral, and in October 2019—approximately ten months after the children had been taken into the Department's care—Mother participated in a substance-abuse evaluation.

**¶6**        At the evaluation, Mother admitted stealing Percocet from her mother when she was seventeen years old and later using suboxone. Terros recommended Mother complete standard outpatient services, and the recommendation was later upgraded to intensive outpatient services based on Mother's positive tests for alcohol. At the time of the February 2020 severance trial, Mother was participating in substance-abuse treatment at Terros, although she acknowledged she missed multiple sessions in December 2019 and was nearly closed out of treatment at that time.

**¶7**        The Department also referred Mother to Physician Services, Inc. in April 2019, so she could engage in consistent drug testing. However, her case manager testified that between the time of that April 2019 referral and the severance hearing, Mother had eighty scheduled urinalysis tests, missed approximately fifty-six of those tests, and tested positive for alcohol approximately seventeen times. At the time of trial, Mother acknowledged she continued to routinely drink alcohol, and she was still unable to be referred to a parent aide because she could not demonstrate thirty consecutive days of sobriety.

**¶8**        The Department also became concerned about domestic violence when Mother advised her case manager in April 2019 that Father had become abusive. The concern escalated in August when Mother

obtained an order of protection against Father. Father repeatedly violated the order, and to address this in part, the Department asked Mother to self-refer for domestic-violence counseling. At the severance trial, Mother testified she did not attend the recommended counseling[3] and instead completed a five-hour on-line domestic-violence course; however, the certificate she submitted to the Department on December 29 was dated December 30, 2019. Mother's case manager testified that, regardless of the certificate's authenticity, a five-hour on-line course was insufficient to address the Department's safety concerns.

¶9        In October 2019, Mother and Father reconciled, and the order of protection was quashed upon Mother's request, even though neither parent had engaged in any required domestic-violence services. At trial, Mother insisted she only requested the order of protection so Father would participate in the Department's services, although at the time she obtained the order of protection, she herself had not yet begun participating in Terros and was substantially noncompliant with other services.

¶10        In November 2019, the Department moved to sever Mother's parental rights, alleging the statutory ground of nine months' time-in-care. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(a). By the time of the contested severance hearing in February 2020, the children had been in the Department's care for more than a year. At the hearing, Mother explained she did not initially engage in services because she thought the whole thing was a "joke" or "game" initiated by her family. Mother also testified that, since April 30, 2019, she had consistently visited the children. She admittedly did not visit them for the first five months they were out of her care, however, as she claimed she was too busy looking for suitable housing. Mother conceded, however, she was unemployed and not participating in any Department services during that time.

¶11        Mother's case manager testified the children are in an adoptive placement with their maternal grandmother, who is meeting all their needs. Additionally, the case manager testified both children need permanency and are readily adoptable, as they are young, healthy, and without any special needs.

¶12        The juvenile court granted the Department's termination motion and severed the parent-child relationship between Mother and the children. The court found the Department made a diligent effort to provide

---

[3]        Mother testified she did not believe she would benefit from domestic-violence counseling.

appropriate reunification services—including substance-abuse assessment, treatment, and testing; visitation; and transportation—but despite the array of services provided, Mother had substantially neglected or willfully refused to remedy the circumstances causing the children to remain in out-of-home care for more than a year. The court also noted Mother never took the services seriously and did not engage in any substance-abuse assessment or treatment until October 2019, which was more than nine months after the Department took the children into care. In addition, Mother's drug tests were sporadic and inconsistent. The court ultimately concluded that Mother's recent attempts to engage in services were "too little, too late." The court also found termination of Mother's parental rights was in the children's best interest.

¶13 Mother filed a timely notice of appeal. We have appellate jurisdiction pursuant to A.R.S. § 8-235(A) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

### I. Standard of Review

¶14 A court may sever parental rights if it finds clear and convincing evidence of one of the statutory grounds for severance and finds by a preponderance of the evidence that severance is in the children's best interest. *See* A.R.S. §§ 8-533(B), -537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 281-82, 288, ¶¶ 7, 41 (2005).

¶15 As the trier of fact in a termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)). Thus, the resolution of conflicts in the evidence is uniquely the province of the juvenile court, and we will not reweigh the evidence in our review. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002). Instead, we review the court's order to determine if reasonable evidence supports its factual findings. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

### II. Termination Pursuant to A.R.S. § 8-533(B)(8)(a)

¶16 Mother does not challenge the juvenile court's finding that the children have lived in an out-of-home placement for nine months or longer or the adequacy of the Department's reunification services; instead, Mother

challenges the court's finding that she substantially neglected or willfully refused to remedy the circumstances that caused the children to be placed out of the home. She maintains that, by the time of the severance trial, she was mostly participating in services, had obtained a stable home, and just "needed additional time." Accordingly, Mother contends that, at the time of trial, she was not willfully neglecting the services because she was doing "something" to reunite with her children.

¶17 The juvenile court may terminate parental rights pursuant to A.R.S. § 8-533(B)(8)(a) if the Department has made a diligent effort to provide the parent with reunification services and

> [t]he child has been in an out-of-home placement for a cumulative total period of nine months or longer pursuant to court order or voluntary placement pursuant to § 8-806 and the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement.

¶18 A parent who makes an "appreciable, good faith effort[] to comply with remedial programs" provided by the Department will not be found to have substantially neglected to remedy the circumstances causing the child to be in an out-of-home placement. *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 576 (App. 1994). However, if a parent "makes only sporadic, aborted attempts to remedy" the circumstances, the juvenile court is "well within its discretion in finding substantial neglect and terminating parental rights on that basis." *Id.*

¶19 Here, reasonable evidence in the record supports the juvenile court's finding that Mother substantially neglected or willfully refused to remedy the circumstances causing the children to be in an out-of-home placement. Moreover, the record also reflects Mother's overstatement of her level of participation in services at the time of trial.

¶20 Although Mother consistently visited the children late in the dependency, she did not begin her visits until approximately five months after she dropped the children off at a relative's home. Further, despite receiving numerous referrals for Terros, Mother waited approximately nine months to begin substance-abuse assessment and treatment, and in late November 2019, she was "demoted" from a standard outpatient substance-abuse program to an intensive outpatient program based on her positive tests for alcohol. At the time of trial, she was still in the intensive outpatient substance-abuse program and was in danger of being terminated from the

program due to missed sessions. Mother also attended less than half her scheduled urinalysis tests (approximately twenty-four out of eighty), tested positive approximately seventeen times, continued to struggle with issues related to alcohol, and was unable to demonstrate sobriety for thirty consecutive days, causing her to continue to be ineligible to be referred to a parent aide.

**¶21**　　　In addition, Mother failed to attend domestic-violence counseling and continued to minimize or deny the existence of domestic violence between her and Father, despite Father's criminal conviction and multiple arrests for repeated violations of the order of protection, and his refusal to engage in domestic-violence counseling or make any behavioral changes. Further, even assuming Mother obtained stable housing during the dependency,[4] she was living with Father, despite the fact they had neither addressed nor resolved the issue of domestic violence between them. As the juvenile court noted, by the time of trial, Mother had not shown she "ever attempted to make meaningful behavioral changes and [never] took the services seriously, even after [she] did start to engage." On this record, reasonable evidence supports the juvenile court's finding that Mother substantially neglected or willfully refused to remedy the circumstances causing the children to be in an out-of-home placement.

### III.　Best Interest

**¶22**　　　Mother next argues the Department failed to prove it was in the children's best interest to sever her parental rights. She contends that although the juvenile court believed the children were doing well with their maternal grandmother, "there is certainly no love better than a [m]other's love, especially when the [m]other and children are bonded."

**¶23**　　　To support a best interest finding, the Department must prove a child will affirmatively benefit from termination or be harmed by continuation of the relationship. *See Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). The juvenile court must consider the totality of the circumstances existing at the time, and the best interest requirement may be met if, for example, the petitioner proves a current adoptive plan exists or the child is adoptable. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150-51, ¶¶ 13-14 (2018). The existence of a bond between a parent and child is also a factor, although not necessarily dispositive, when assessing a

---

[4]　　　The case manager testified she had not received documented proof regarding housing from Mother.

child's best interest. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98-99, ¶ 12 (App. 2016).

¶24  As reflected in the severance order, the juvenile court determined Mother had not meaningfully addressed the safety concerns of substance abuse and domestic violence that put the children at risk of harm. The court also found the children's placement with their maternal grandmother was meeting all their needs and was the least restrictive placement. Further, the court found the children were young, without any special needs, and adoptable. Although the court acknowledged Mother and the children were bonded, the court concluded that did not mean the children should have to "linger in care waiting for [Mother] to take this case seriously." We agree and conclude reasonable evidence supports the juvenile court's findings and conclusion that terminating Mother's parental rights was in the children's best interest.

## CONCLUSION

¶25  The juvenile court's order terminating Mother's parental rights to the children is affirmed.

